IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

MARCIA D. OLESON,

                      Plaintiff,                      OPINION & ORDER

    v.                                          12-cv-919-jdp

CAROLYN W. COLVIN,
Commissioner of the Social
Security Administration,

                      Defendant.

Plaintiff Marcia D. Oleson seeks judicial review of a final decision of the Commissioner of Social Security finding her not disabled within the meaning of the Social Security Act. Plaintiff contents, principally, that the Administrative Law Judge (ALJ) erred in assessing her residual functional capacity by (1) improperly discrediting the opinion of one of the consultants who evaluated the medical evidence and (2) improperly discounting plaintiff's testimony. Although there is ample evidence in the record to support the Commissioner's decision, the ALJ failed to provide the required logical bridge from that evidence to his findings. This court may not usurp the ALJ's role by re-weighing the evidence, and thus the matter will be remanded for further proceeding.

BACKGROUND

A.  Procedural Background

Plaintiff was born in 1959 and has a high school education. After high school, she worked with the Forest Service, and then as a clothing inspector before taking a job in a factory, running a machine that put a point on steel drill bits. She later worked as a cook in several restaurants. Her regular employment ended in 1991, and for the next twenty years

she was self-employed doing part-time desktop publishing, never earning more than $2,000 per year. On January 11, 1991, plaintiff gave birth to her first child. She had her second child by caesarian section on December 26, 1991. Her regular employment ended in 1991, and her date last insured is March 31, 1992. Thus, plaintiff must establish that she became disabled before that date to be eligible for Social Security Disability Insurance Benefits.

On March 17, 2009, plaintiff sought Social Security Disability Insurance Benefits, alleging that she had been disabled since January 15, 1991. Plaintiff claimed that she suffered from obesity, irritable bowel syndrome (IBS), arthritis, and carpal tunnel syndrome. She also described suffering from spells of dizziness, an intestinal parasite, lower back pain, ankle pain, stabbing pains in her abdomen that were characterized to her as "pregnancy pains" following the births of her two children, urinary tract infections, and very heavy menstrual bleeding.

On July 16, 2009, plaintiff's application was denied. It was denied again on reconsideration on October 15, 2009. She requested a hearing on November 5, 2009, which took place before ALJ Charles E. Stevenson on June 17, 2010. A vocational expert (VE) was present at the hearing, but did not testify. Plaintiff received an unfavorable decision on July 28, 2010, in which ALJ Stevenson determined that plaintiff was not disabled between her alleged onset date of January 15, 1991, and her date last insured, March 31, 1992. R. 130-37.[1]

Plaintiff requested review from the Appeals Council, and the matter was remanded on June 24, 2011, with instruction to the ALJ to:

---

[1] The record citations are to the Administrative Record, Dkt. 5.

1. Give further consideration to the nonexamining source opinion of Dr. Sami Nafoosi, MD, pursuant to the provisions of 20 C.F.R. 404.1527 (f) and Social Security Ruling 96-6p and explain the weight given to such opinion evidence;

2. Further evaluate plaintiff's subjective complaints and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms (20 C.F.R. 404.1529) and Social Security Ruling 96-7p;

3. Give further consideration to the plaintiff's maximum residual functional capacity (RFC) and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 C.F.R. 404.1545 and Social Security Ruling 96-8); and

4. Obtain evidence from a VE to clarify the effect of the assessed limitations on the plaintiff's occupational base (Social Security Rulings 83-12, 83-14, 85-15 and 96-9p). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The ALJ will ask the VE to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 C.F.R. 404.1566). Further, before relying on the VE evidence the ALJ will identify and resolve any conflicts between the occupational evidence provided by the VE and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

R. 143.

Pursuant to the remand order, plaintiff had a second hearing before ALJ John H. Pleuss on May 1, 2012. VE John R. Reiser was present and testified at the hearing. Following the hearing, plaintiff received another unfavorable decision on May 16, 2012. R. 17-26. She again requested review from the Appeals Council, but her request was denied on July 23, 2012, making the decision the final determination of the Commissioner. She timely sought judicial review in this court under the Social Security Act, 42 U.S.C. § 405(g).

**B.  Relevant Medical Evidence**

Plaintiff identified the onset date of her impairments as January 15, 1991, and her date last insured was March 31, 1992. Thus, plaintiff bears the burden to establish a disability beginning within that fifteen-month window. Plaintiff's task is complicated by the fact that she did not apply for benefits until 17 years after her date last insured, which means that plaintiff has sparse medical evidence that is contemporary with the onset of her alleged disability, and her own testimony must necessarily be based on memories dimmed by the passage of considerable time.

But plaintiff has some contemporaneous medical records because she received regular medical care from the Marshfield Clinic at Merrill, Wisconsin, particularly from 1990 to 1992. R. 340-59.[2] Most of plaintiff's medical care during this period was related to her two pregnancies and births. Plaintiff provides medical records spanning from 1982 to 2009, during which she presented a broad range of medical issues, including dizzy spells, ear infections, sinus infections, irritable bowels, an intestinal parasite, lower back pain, ankle pain, abdominal cramping, yeast infections, urinary tract infections, and very heavy menstrual bleeding.

**1.  Pregnancy-Related Treatment**

Plaintiff gave birth to her first child on January 11, 1991, just before the alleged onset date of her disability. Following her delivery, her medical records indicate that she went to regular appointments and complained about postpartum cramping. R. 357, 359. On March

---

[2] The Marshfield Clinic records, Exhibits 1F and 2F in the administrative record, are not in date order and the dates provided in the bookmarks of the electronic file are not accurate. Plaintiff appears to have received some care from the Marshfield Clinic as early as 1982. Plaintiff received frequent care during the most pertinent period, from 1990 to 1992. R. 340-59.

4, 1991, the medical records indicate that she was "doing quite well," "moving well," and had no restrictions on activities. R. 357-58. During her second pregnancy, plaintiff had regular prenatal appointments and phone calls documented in her medical records. R. 355-57. While pregnant and following her cesarean section, plaintiff had mild yeast infections and possible urinary tract infections. R. 348, 358. She had follow up exams after her cesarean section, which record that on January 3, 1992, she was "having no difficulties after her Cesarean Section," was "eating well [and] moving her bowels well." R. 347-48. On February 17, 1992, the medical record indicates that plaintiff was "feeling quite well" and "still [had] some hip pain, but markedly improved." R. 347. After her pregnancies, a radiology report dated September 1, 1992, states that plaintiff's hip and back were determined to be normal. R. 386. On December 2, 1992, plaintiff's restrictions regarding her hip and back pain were removed. R. 340. On that date, the medical records note that she was "moving well." R. 341.

### 2.  Non-Pregnancy-Related Treatment

There is little medical evidence of non-pregnancy issues from 1990 to 1992. Before the relevant time period, on July 27, 1990, plaintiff complained of hand pain and was diagnosed with mild carpal tunnel syndrome. R. 349, 355. During the relevant time period, plaintiff regularly complained of sinus and ear infections. R. 346-49, 355-56. Plaintiff also had ankle pain in March 1992 from having "stepped funny," which the medical records indicated should have been resolved in six weeks or less. R. 346. No mention of gastro-intestinal issues appears in the medical record during the relevant time period, but they do appear later in her medical records, which indicate that she reported that she had suffered gastro-intestinal for "years." R. 326, 394-96, 421, 434.

Two medical consultant physicians reviewed the medical records and offered opinions regarding plaintiff's condition.[3] Dr. Syd Foster, DO reviewed plaintiff's medical history in 2009 to make a retroactive determination of plaintiff's condition during the relevant time period. Dr. Foster provided a primary diagnosis of hip/back pain with a secondary diagnosis of carpal tunnel syndrome. He opined that plaintiff could lift and carry no more than fifty pounds occasionally and no more than twenty-five pounds frequently. R. 592. He limited her to sitting, standing, and walking about six hours in an eight hour work day and did not provide any postural limitations. R. 592-93.

In 2010, Dr. Sami Nafoosi, MD also reviewed plaintiff's medical records to make a retroactive determination of plaintiff's condition during the relevant time period. Dr. Nafoosi opined that plaintiff could lift and carry no more than twenty pounds occasionally and ten pounds frequently. R. 622. He limited her to sitting, standing, and walking no more than one hour each without interruption. R. 623. He limited her to standing and walking no more than six hours total in an eight hour workday. R. 623. The ALJ found that Dr. Nafoosi underestimated plaintiff's exertional capacity, which is one of the findings plaintiff appeals. Dr. Nafoosi also opined that as of September 1, 2003, plaintiff's impairments medically equaled listed impairment 1.04A (spinal disorder with nerve root compression). The ALJ rejected this opinion, a finding plaintiff does not challenge.

## C. The Administrative Hearing and Decision

At the May 1, 2012 video hearing, the ALJ took testimony from plaintiff and VE John R. Reiser. The ALJ asked plaintiff about her work history, her pregnancies and other medical

---

[3] Other consultants also reviewed plaintiff's records, including a psychologist who found that plaintiff did not suffer from any medically determinable mental impairment. R. 603-16. Plaintiff has not challenged that determination.

history, and her daily activities during the relevant time period. Plaintiff testified that she has suffered from IBS since her 20s and described the various treatments for it that she has tried over the years. She also described suffering from vertigo and dizziness for most of her life. Plaintiff testified that she waited so long to apply for benefits because she was trying to work and to remedy her medical impairments during that time.

The ALJ posed a series of hypotheticals to the VE, asking what kind of work someone with plaintiff's vocational history and medical limitations could perform in the economy. Specifically, the hypothetical proposed someone capable of medium exertion and limited them to no more than occasional climbing, stooping, bending, crouching, crawling, or kneeling. The VE responded that two of plaintiff's past jobs, as a machine tender and a cook's helper, could fit that description as they are performed in the general economy. He also identified security guard, general clerk, telemarketer, machine feeder, ticket taker, and sorter as low-skilled and unskilled jobs that would be available with the limitations described in the hypothetical. Plaintiff's attorney asked the VE what kind of work would be available for someone capable of only light exertion or sedentary work, with the additional restriction of sitting, standing, or walking for only one hour at a time and a total combined standing and walking limit of six hours per work day. The VE reduced the number of available jobs by 50 percent for someone capable of light exertion and 10 percent for someone capable of only sedentary work.

The ALJ's written decision analyzed each of the five steps of the regulatory sequential analysis. For step one, he found that plaintiff last met the insured status requirements on March 31, 1992 and did not have substantial gainful employment from the onset of her impairments on January 15, 1991 until March 31, 1992. For step two, the ALJ gave plaintiff

"the benefit of the doubt and the benefit of scant medical records" to find that she had severe medical impairments of obesity and possible early arthritis in the hips with complaints of pain. At step three, the ALJ found that these impairments did not meet or medically equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

ALJ found that plaintiff's RFC allowed her to perform medium work as defined in 20 C.F.R. § 404.1567(c), but limited her to no more than occasional climbing, stooping, bending, crouching, crawling, or kneeling. R. 22. The ALJ found that plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible because they were contradicted by her medical records. The ALJ gave only "partial weight" to Dr. Nafoosi's opinion, rejecting his exertional limitation. For steps four and five, The ALJ found that plaintiff was capable of working in either her previous relevant work or, alternatively, in one of the many low-skilled and unskilled jobs in the regional economy, consistent with the VE's testimony at the hearing. The ALJ concluded that plaintiff was not disabled at any time between January 15, 1991 and March 31, 1992.


OPINION

A federal court reviews a final decision by the Commissioner of Social Security, deferring to the Commissioner's findings of fact as "conclusive" so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The reviewing court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). However, a reviewing "court

must conduct a critical review of the evidence before affirming the [C]ommissioner's decision, and the decision cannot stand if it lacks evidentiary support or is so poorly articulated as to prevent meaningful review." *Hemminger v. Astrue*, 590 F. Supp. 2d 1073, 1079 (W.D. Wis. 2008) (internal citations omitted). To provide the necessary support for a decision to deny benefits, the ALJ must "build an accurate and logical bridge from the evidence to [his] conclusion." *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

Plaintiff contends that the ALJ erred in determining plaintiff's RFC in two ways. First, plaintiff contends that the ALJ wrongly rejected Dr. Nafoosi's exertional limitation. Second, plaintiff contends that the ALJ wrongly discredited plaintiff's credibility.

## A. The ALJ's consideration of Dr. Nafoosi's opinion

Dr. Nafoosi and Dr. Foster agreed that plaintiff's obesity was a severe impairment, but they reached different conclusions about plaintiff's exertional capacity during the relevant period. The ALJ credited Dr. Nafoosi's postural limitations in light of plaintiff's obesity and he included them in his RFC. But the ALJ found that plaintiff otherwise had the capacity to perform the full range of medium work as defined in 20 C.F.R. § 404.1567(c), limiting her to no more than occasional climbing, stooping, bending, crouching, crawling, or kneeling. R. 22. In making this determination, the ALJ rejected Dr. Nafoosi's limitation of the plaintiff to lifting and carrying no more than 20 pounds occasionally and no more than 10 pounds frequently. Dr. Foster did not impose this limitation, and the ALJ fully embraced Dr. Foster's opinion rather than Dr. Nafoosi's.

The ALJ gave essentially two reasons for accepting Dr. Foster's opinion over Dr. Nafoosi's. First, the ALJ said that Dr. Foster "considered the objective evidence in light of his specialized knowledge of SSA disability law, rules and regulation." This is not an adequate

9

reason. Dr. Nafoosi's report indicates that he, too, reviewed all the materials provided by ALJ Stephenson when he solicited Dr. Nafoosi's review. R. 629. Dr. Nafoosi, too, is apparently an experienced medical consultant for the Social Security Administration. Thus, the reason given by the ALJ does not justify weighting Dr. Foster's opinion more heavily than Dr. Nafoosi.

The record might well support the ALJ's weighting, but it is the responsibility of the ALJ, not the court, to weigh the evidence. Dr. Foster's report included a commentary section in which he cited specific treatment notes to support his opinions about plaintiff's functional capacity. R. 598. Dr. Nafoosi cited a few specific records to support his opinion that plaintiff had a medically determinable impairment, R. 629, but he did not provide details that would support a determination of plaintiff's residual functional capacity. Because Dr. Nafoosi offered an opinion that plaintiff had a listed impairment, he did not have to answer the question pertaining to plaintiff's functional capacity. R. 630-31. If any of this is the basis for the ALJ's preference for Dr. Foster's opinion, he will need to spell it out to establish the logical bridge from the evidence to his conclusions.

The second reason the ALJ gave for discounting Dr. Nafoosi's exertional limitation is that a medium functional capacity was more consistent with plaintiff's actual functioning during the period at issue, when plaintiff served as a full-time, stay-at-home mother of an infant and a one-year-old. That reason is inadequate. Although serving as a full-time mother of two children is undoubtedly challenging, the ALJ did not establish that plaintiff's child-rearing tasks involved the effort of medium work: frequent lifting of up to 25 pounds, with occasional lifting of 50 pounds. Plaintiff testified that her husband did the heavy household work, which the ALJ did not specifically discredit. The ability to do daily household activities

does not necessarily translate into the ability to perform fulltime, gainful activity. *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004). If there is something in the record that demonstrates that plaintiff was exerting medium-level effort during the relevant period, the ALJ will need to point it out.

### B. Plaintiff's Credibility

The court will ordinarily afford an ALJ's credibility determinations "considerable deference," upholding them if they are supported by substantial evidence and reversing only if they are "patently wrong." *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) ("As long as the ALJ's decision is supported by substantial and convincing evidence, it deserves [the] court's deference."); *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (affording ALJ credibility findings "considerable deference," and overturning them only if "patently wrong").

Plaintiff contends that the ALJ makes two fundamental errors in assessing her credibility. First, the ALJ completely disregarded her testimony concerning her gastro-intestinal conditions, particularly her IBS and intestinal parasite. Second, the ALJ discounted plaintiff's testimony concerning the severity of her pain.

Plaintiff is correct that the ALJ did not address her IBS or parasitic infection. The ALJ determined that her obesity and her arthritic hip constituted severe impairments; he did not regard the IBS or the parasitic infection to constitute a severe medically determinable impairment. Plaintiff is also correct that she testified about her gastro-intestinal symptoms at the hearing. But she testified to a litany of health problems, large and small, that came and went over decades. The ALJ need not address every one of plaintiff's ailments, particularly when the medical evidence does not suggest that the ailment was a serious impairment during the relevant period in 1991-92.

11

Plaintiff concedes that neither the IBS nor the parasitic infection was evident in her medical records from the relevant time period. Dkt. 8, at 14. It is the plaintiff's burden to supply medical evidence in support of her claim. *Scheck v. Barnhart*, 357 F. 3d 697, 702 (7th Cir. 2004) ("It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability."). The medical evidence she provides must establish her impairment. 20 C.F.R. §§ 404.1508, 404.1528(a). None of the medical consultants identified plaintiff's IBS or the parasitic infection as a serious impairment in 1991 or 1992. Plaintiff's uncorroborated testimony that she had these problems "for years," is not sufficient evidence to establish an impairment. Even if plaintiff had more than her own testimony and received a retrospective diagnosis, without corroborating evidence, it would remain insufficient. *Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998) ("A retrospective diagnosis may be considered only if it is corroborated by evidence contemporaneous with the eligible period."). Plaintiff's bowel problems do not relate to a severe medically determinable impairment, and it was not error for the ALJ to fail to discuss them. On remand, the ALJ may choose to address plaintiff's testimony concerning her bowel symptoms if he considers them significant or to further explain why he does not find them significant.

The ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however the [plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." R. 23. The ALJ's credibility assessment gets off on the wrong foot by using the boilerplate language that has been so excoriated by the Seventh Circuit. *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012) (referring to this very wording as "even worse" than another

12

"meaningless boilerplate" version of the sentiment). The boilerplate is bad rhetoric, because it implies that the plaintiff is incredible simply *because* her testimony deviates from the ALJ's findings. The ALJ includes some analysis along with the unfortunate boilerplate, but on remand the ALJ must support his analysis with a more thorough treatment of the medical evidence.

As discussed above, the ALJ cannot discount plaintiff's testimony that she suffered significant limiting pain merely because she was parenting two small children. If there is evidence of plaintiff's activities of daily living that actually contradict plaintiff's testimony concerning her subjective symptoms, the ALJ should point out that evidence. The ALJ has cited one such example already: in December 1992, plaintiff was walking about 40 minutes three times a week. R. 23 (citing R. 341). It would be particularly useful to point out any evidence that plaintiff was able to lift 25 pounds frequently, if there is any.

The ALJ has properly pointed out that plaintiff did not make heavy use of pain medication, which tends to discredit her testimony about her subjective symptoms. Plaintiff contends that her use of pain medication was sometimes impeded by her lack of insurance, which is a factor that might explain the plaintiff's failure to seek treatment. SSR 96-7p. Plaintiff appears to have received very regular care from 1990 to 1992, although she may have had periods without insurance in the mid-2000s. On remand, the ALJ should address whether there is any evidence that plaintiff's treatment during the relevant period was impeded by a lack of insurance.

The ALJ has already done a creditable job of explaining his reasons why plaintiff's hip and ankle pain was not severely limiting 1991 and 1992, albeit in the context of steps two and three of the analysis. R. 20, 22. On remand, the ALJ should carefully review the record of

plaintiff's medical care from 1990 to 1992 (R. 340-59) and discuss whether this evidence supports or contradicts plaintiff's description of her other significant subjective symptoms.

In determining that plaintiff stopped working in 1990 "because of her pregnancy," the ALJ discredited plaintiff's testimony that she stopped working because she could not stay on her feet. Instead, he cited Dr. Foster's RFC assessment, which states conclusion that "[e]vidence shows clmt quit working in 1990 due to pregnancy." R. 598. But Dr. Foster does not cite any evidence. The ALJ surmised that "it is likely that the claimant did not want to work while she was pregnant and then nursing her infants." R. 23. The ALJ may consider the role plaintiff's pregnancies played in her claim of disability. But on remand, the ALJ should point to evidence in the record to support any finding that plaintiff elected to quit work to raise her children.

CONCLUSION

As instructed by the Appeals Council, the ALJ obtained evidence from a VE to clarify the effect of the assessed limitations on the plaintiff's occupational base, consistent with SSR 83-12, 83-14, 85-15, and 96-9p. The VE's evidence was properly adduced and considered, in light of the RFC determined by the ALJ. On remand, if the RFC changes, the ALJ will likely have to solicit new VE evidence.

There is evidence in the record that could support the ALJ's determination that plaintiff was not disabled between January 15, 1991 and March 31, 1992. But this court will not decide whether plaintiff is entitled to benefits; that it for the ALJ to determine. This court does require that the ALJ's decision is supported by substantial evidence, logically

14

linked to the ALJ's conclusions. Because that logical link is lacking in important respects, the court will reverse and remand the case.

ORDER

IT IS ORDERED that the decision of defendant Carolyn W. Colvin, Commissioner of Social Security, denying plaintiff Marcia D. Oleson's application for disability benefits is REVERSED and REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The clerk of the court is directed to enter judgment in favor of plaintiff and close this case.

Entered this 28th day of August, 2014.

BY THE COURT:

/s/

JAMES D. PETERSON
District Judge